UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARYAH PIMENTEL,<br><br>        Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>        Defendant. | Case No.  2:22-cv-01937-JDP (SS)<br><br>**ORDER**<br><br>GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 11 & 13 |

      Plaintiff, who suffers from anxiety, depression, degenerative disc disease, arthritis, and gastritis, challenges the final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act.  Both parties have moved for summary judgment.  ECF Nos. 11 & 13.  Because I find that the ALJ improperly rejected medical opinion evidence, plaintiff's motion is granted, and the Commissioner's cross-motion is denied.

**Standard of Review**

      An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards have been applied.  *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  "'Substantial evidence' means more than a mere scintilla, but less than a

preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process, the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

In March 2020, plaintiff protectively filed an application for a period of disability and DIB, alleging disability beginning on December 31, 2019.[1] Administrative Record ("AR") 13, 62, 82, 176, 183. After her application was denied both initially and upon reconsideration, a telephonic hearing was held before an Administrative Law Judge ("ALJ"). AR 28-57, 62-105. On September 3, 2021, the ALJ issued a decision finding that plaintiff was not disabled. AR 10-26.

---

[1] An application for benefits must be submitted on a prescribed form. 20 C.F.R. § 404.160. However, a written statement indicating a person's intent to claim benefits can establish a "protective" filing date if certain requirements are met. *Id.* § 404.630.

2

Specifically, the ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2023.

2. The claimant has not engaged in substantial gainful activity since December 31, 2019, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, anxiety disorder, depressive disorder, gastritis, and right knee arthritis.

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

* * *

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: she could lift and carry 25 pounds occasionally and frequently; she could stand and walk for 6 hours per workday; she could sit for 6 hours per workday; she could frequently climb, stoop, crouch, and crawl; she could understand, remember, and apply simple instructions; she could maintain concentration, persistence, and pace for simple job tasks; she could occasionally interact with supervisors, coworkers, and the public except that she is unable to work with coworkers on a team-type assignment; she must avoid concentrated exposure to extreme cold; and she must avoid all exposure to heights or dangerous machinery.

* * *

6. The claimant is unable to perform any past relevant work.

* * *

7. The claimant was born [in] 1969 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8. The claimant has at least a high school education.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a

> framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 10. Work does [ ] exist in significant numbers in the national economy that the claimant could perform.
>
>    * * *
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2019, through the date of this decision.

AR 15-22 (citations to the code of regulations omitted).[2]

Plaintiff requested review by the Appeals Council, but the request was denied. AR 1-6, 173-75. She now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**Analysis**

Plaintiff challenges the disability denial on the following grounds: (1) the ALJ failed to comply with Acquiescence Ruling 97-4(9) when adopting the residual functional capacity without consideration of the prior disability decision; (2) the ALJ, when adopting the RFC, failed to account for plaintiff's moderate limitations in maintaining concentration, persistence, and pace; and (3) the ALJ failed to consider properly the opinion of consultative psychologist Molly Malone, Psy.D. ECF No. 11 at 7-19.

**A.    Legal Standard for Evaluating Medical Opinion Evidence**

The court first considers plaintiff's assertion that the ALJ failed to consider properly medical opinion evidence. In 2017, revised Social Security Administration regulations took effect concerning the evaluation of medical opinions.[3] Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ determines which

---

[2] The ALJ noted that plaintiff previously filed a DIB application that was denied on March 8, 2017, "by an administratively final initial determination." AR 13. The ALJ stated that because plaintiff alleges a disability onset date of December 31, 2019, she is not seeking to "reopen" the prior initial determination. *Id.*

[3] Because plaintiff filed her application for benefits after March 27, 2017, the new regulations apply in this case. *See* 20 C.F.R. § 404.1520c.

4

medical opinions are the most "persuasive" by focusing on a variety of factors: (1) supportability; (2) consistency; (3) relationship with the claimant—including the length of treatment, frequency of examinations, purpose and extent of treatment, and whether the medical source examined the claimant as opposed to reviewing only the documentary medical evidence; (4) the medical source's area of specialty; and (5) "other" factors, such as the impact of any new evidence received after a medical source has provided a medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

The factors of "supportability" and "consistency" are the "most important" when determining the persuasiveness of medical opinions, and the ALJ must explain how both were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Under the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Under the "consistency" factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is only required to address the remaining factors when "two or more medical opinions . . . about the same issue are equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

**B.   The ALJ's Consideration of Dr. Malone's Opinion**

On August 19, 2020, Dr. Malone, a licensed psychologist, performed a comprehensive evaluation of plaintiff's mental status. AR 563-67. During the exam, plaintiff complained of depression, anxiety, and panic attacks, which caused "moderate" psychiatric symptoms on a daily basis. Plaintiff reported that the symptoms began eighteen years earlier and had grown "worse and more persistent," and that she is "passively" suicidal, although she denied any current suicidal ideation. Plaintiff attended counseling and was prescribed psychotropic medications, including Ambien, Lorazepan, Zolpiden, and Fluoxetine. She reported that she is able to carry out basic

activities of daily living, manage funds appropriately, and prepare meals. AR 563-65.

Dr. Malone noted certain psychiatric abnormalities: plaintiff presented in a disorganized manner, she had an anxious mood and labile affect, and her attention was limited. In all other respects, plaintiff's mental status was generally normal; Dr. Malone found that she was cooperative, alert, and fully oriented; she had "good" concentration and "adequate" memory; her judgment, insight, and thought processes were "intact"; and her thought content was "unremarkable." AR 563, 565-66. Dr. Malone diagnosed plaintiff with persistent depressive disorder, an unspecified anxiety disorder, and an unspecified personality disorder that had borderline personality traits. AR 566. For plaintiff's functional limitations, Dr Malone opined in relevant part that plaintiff is mildly impaired in her ability to maintain regular attendance in the work place, moderately impaired in her ability to perform work activities on a consistent basis due to a tendency to become easily overwhelmed, and markedly impaired in her ability to complete a normal workday or workweek without interruptions resulting from her psychiatric condition, based on her poor distress tolerance, emotional lability, and tendency to become easily overwhelmed. AR 566.

After reviewing the record, the ALJ concluded that plaintiff has: (1) a mild limitation in understanding, remembering, or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation in concentrating, persisting, or maintaining pace; and (4) a mild limitation in adapting or managing herself. AR 17. In turn, the ALJ determined that plaintiff has the residual functional capacity to perform light work except, among other restrictions, "she could maintain concentration, persistence, and pace for simple job tasks; she could occasionally interact with supervisors, coworkers, and the public [but] she is unable to work with coworkers on a team-type assignment[.]" AR 18.

In formulating the RFC, the ALJ considered Dr. Malone's limitations, but rejected her opinion as unpersuasive on the basis that it was "not entirely consistent" with her own examination findings. AR 20. The ALJ points out that, although plaintiff presented with limited attention, an anxious mood, and labile affect, Dr. Malone nevertheless found that she was cooperative, alert, and fully oriented, and that her mental status was "generally normal" with

6

1  respect to concentration, memory, judgment, insight, thought processes, and thought content. *Id.*
2  Without more, it appears that the ALJ's reliance on Dr. Malone's assessment of cognitive
3  capabilities and demeanor is misplaced; plaintiff reports that she is disabled because of symptoms
4  of depression and anxiety—she does not allege a cognitive impairment. Indeed, Dr. Malone's
5  workplace limitations are linked to plaintiff's poor tolerance for workplace stress and emotional
6  lability, and not cognitive functioning. Accordingly, the court finds that the ALJ's reasoning is
7  inadequate, as there is no explanation how the normal cognitive findings undermine Dr. Malone's
8  opinion that plaintiff's depression and anxiety impair her ability to complete a workday or
9  workweek without interruptions.

10  The ALJ also concluded that Dr. Malone's opinion was not persuasive because plaintiff's
11  treatment records reflected "generally normal" mental status examination findings. AR 20. The
12  ALJ highlighted a mental health progress noted dated January 31, 2019, that indicated that
13  plaintiff had a dysphoric mood, a "mood congruent" affect, impaired insight, and impaired
14  judgment, while her mental status was normal with respect to behavior, demeanor, speech,
15  through processes, and thought content. AR 18, 379. The ALJ also cited a mental health progress
16  note dated November 4, 2020, which reflected that plaintiff complained of ongoing depression
17  and low energy. She had a depressed mood, as well as impaired insight and judgment, but
18  otherwise had linear and goal-directed though processes and was fully oriented. AR 19, 615-16.
19  For the same reasons discussed above, this is not a legally sufficient reason to reject Dr. Malone's
20  limitations, since the ALJ has not explained with sufficient specificity how the cognitive findings
21  are inconsistent with Dr. Malone's opinion that plaintiff's symptoms of depression and anxiety
22  limit her ability to function in the workplace.

23  Next, the ALJ discounted Mr. Malone's opinion as overly restrictive because plaintiff had
24  reported that her anxiety was "effectively controlled." AR 20. In support, the ALJ cited to two
25  "Gastroenterology Pre-procedure Plan of Care Notes" included in plaintiff's treatment records.
26  *Id.* (citing AR 325, 331). The notes reflect that plaintiff underwent sigmoidoscopies on February
27  18, 2020, and on December 19, 2019, and that beforehand a registered nurse reviewed a pre-
28  procedure check list, covering topics such as pain management and infection risk, along with

1  other instructions. The check lists include separate entries stating "Pre-op anxiety" and "Anxiety
2  is effectively controlled." AR 325, 331. Given these circumstances, the court finds that the ALJ
3  improperly relied on the pre-procedure notes to discredit Dr. Malone's opinion. The notes reflect
4  that a nurse went through a routine list of instructions and information about the sigmoidoscopy;
5  the procedure was unrelated to any mental health treatment. In this context, the notations
6  referencing "anxiety," while somewhat vague, possibly reflect that plaintiff's anxiety *about the*
7  *impending procedure* was effectively controlled. There are no other records demonstrating that
8  plaintiff's anxiety disorder was in fact controlled; indeed, she testified at the hearing that she was
9  taking her prescribed psychotropic medication and continued to experience symptoms of
10 depression and anxiety, including panic attacks. AR 31, 38-50.

11     The ALJ's final reason for rejecting Dr Malone's opinion was that the overall record
12 lacked documentation of ongoing mental health-specific treatment. AR 20. As discussed above,
13 however, plaintiff received mental health treatment in 2019 and 2020. A review of the medical
14 evidence shows that she has been continually prescribed psychotropic medications to treat her
15 symptoms of depression and anxiety, as well as insomnia. Additionally, in January 2019, her
16 prescription for Prozac was increased, and in November 2020, a new medication, Wellbutrin, was
17 added. AR 379, 618.

18     In any event, in considering Dr. Malone's opinion, the ALJ did not adequately address the
19 consistency factor, which requires an explanation concerning how a medical opinion is consistent
20 with the evidence from other medical and nonmedical sources. *See* 20 C.F.R. § 404.1520c(c)(2);
21 *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023). The court notes that the ALJ accepted the
22 opinions of the state-agency physicians as "generally persuasive" and crafted the RFC to account
23 for their findings that limited plaintiff to simple and detailed tasks and minimal contact with
24 people. *See* AR 62-79, 81-104. The ALJ ignored, however, their findings that plaintiff has
25 moderate limitations in (1) her ability to maintain attention and concentration for extended
26 periods; (2) her ability to perform activities within a schedule, maintain regular attendance, and be
27 punctual within customary tolerances; and (3) her ability to complete a normal workday and
28 workweek without interruptions from psychiatric symptoms, and to perform at a consistent pace

without an unreasonable number and length of rest periods.  AR 76, 99.  Accordingly, the RFC's restriction to simple job tasks—without any mention of maintaining regular attendance or completing a normal workday—conflicts not only with Dr. Malone's opinion, but also with the opinions of the state-agency physicians.  *See Macias v. Saul*, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021) (collecting cases, and holding that a limitation to simple tasks in the RFC does not account for moderate limitations in maintaining regular attendance or completing a normal workday); *Neufeld v. Berryhill*, 2018 WL 4739699, at *6 (C.D. Cal. Sept. 30, 2018) ("Having afforded 'great weight' to the opinions of Dr. Bartell and Dr. Loomis, the ALJ was bound to either incorporate their findings as to Plaintiff's limitations or explain why she decided not to accept them.").  In rejecting Dr. Malone's mild limitation concerning regular attendance, moderate limitation in performing work activities on a consistent basis, and marked limitation in the ability to work an entire day or week uninterrupted by psychiatric symptoms, the ALJ failed to consider that the state-agency physicians set limitations that are, to a certain extent, consistent with those set by Dr. Malone.  Accordingly, the court finds that the ALJ's rejection of Dr. Malone's opinion is not supported by substantial evidence.

Having determined that the ALJ failed to provide legally sufficient reasons for rejecting medical opinion evidence, the court declines to address plaintiff's remaining claims challenging the RFC, as the RFC will again be at issue on remand.

### C. Remand for Further Proceedings

Given the ALJ's error in evaluating the medical opinion evidence, the matter must be remanded for further consideration.  *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted); *Treichler v. Comm'r of Social Sec.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

**Conclusion**

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 11, is granted.

2. The Commissioner's cross-motion for summary judgment, ECF No. 13, is denied.

3. The matter is remanded for further proceedings consistent with this order.

4. The Clerk of Court is directed to enter judgment in plaintiff's favor.

IT IS SO ORDERED.

Dated:   February 6, 2024                              _____
                                                       JEREMY D. PETERSON
                                                       UNITED STATES MAGISTRATE JUDGE